## WHITE RIVER BURIAL ASS'N et al. v. THOMPSON, Collector of Internal Revenue.

Civil Action No. 1714.

United States District Court
E. D. Arkansas, W. D.

Dec. 10, 1948.

Leon B. Catlett, of Little Rock, Ark., for plaintiffs.

G. D. Walker, Asst. U. S. Atty., of Little Rock, Ark., and Rhodes S. Baker, Jr., Sp. Asst. to U. S. Atty. Gen., for defendant.

TRIMBLE, Chief Judge.

This cause came on for trial and the court, having heard the evidence and considered the stipulation of the parties, finds the facts and states the conclusions of law as follows:

Findings of Fact.

1. The plaintiff is an unincorporated association, organized June 25, 1934, pursuant to Section 898 of Pope's Digest of the Statutes of the State of Arkansas, and has its place of business at Batesville, Independence County, Arkansas.

2. The defendant H. E. Thompson, at the time this action was begun, was the Collector of Internal Revenue for the District of Arkansas, residing at Little Rock, Arkansas, within the jurisdiction of this court.

3. The plaintiff was organized and is operating for the sole purpose of purchasing without profit to the plaintiff association burial services for its deceased members. Its membership in 1945 totalled 25,-900 persons, residing in the vicinity.

4. The plaintiff by state statute is placed under the State Bank Commissioner for the purpose of supervision.

5. The sole source of income for the plaintiff is from assessments levied quarterly upon its membership, and when collected the assessments are placed in one account from which death claims and expenses are paid.

6. Under the published rules and regulations promulgated by the State Bank Commissioner it is provided the expenses of the Association shall never exceed 20% of its collected assessments during any given period.

7. Under these rules and regulations no funds are set aside, allocated, or earmarked for the payment of expenses.

8. No distinction is made in the accounting system of the Association between funds for the payment of expenses and those for the payment of death claims, but all collections are deposited and kept in one fund.

9. After the payment of death claims and expenses the balance of assessments collected in the period together with such balances from former periods constituted a reserve which could be used solely for the payment of death claims.

10. The Rules and Regulations of the State Banking Department governing burial associations, which have the force and effect of statutes, provide:

"Ownership of Funds. Since burial associations are non-profit, mutual benefit societies, all assessments, dues and/or other funds of whatever kind or character, collected or received by them, over and above necessary expenses (which in no event may exceed 20% of its receipts for any given period) shall be and remain the property of the Association for use and benefit of its members only."

11. This reserve so created is held by the association and is subject to be used at any and all times for the payment of death claims, and under the by-laws of the association, no distribution can be made other than for death claims.

12. The collection of the assessment for two periods was waived by the Association because the reserve was sufficient and the payment of the assessments difficult because of adverse economic conditions during the depression years.

13. Under the rules and regulations promulgated by the State Bank Commissioner, upon the liquidation or discontinuance of the association, the reserve, if any, will be taken in charge by the Commissioner and distributed pro rata to the then members as their interest may appear.

14. The following is a compilation of the collections, expenses, and reserve of the association for the years involved herein:

| Year | Assessments Collected | Operating Exp. | Funeral Exp. | Reserve |
|---|---|---|---|---|
| 1934 | $ 1,403.03 | $ 496.52 | $ 865.00 | $ 41.51 |
| 1935 | 15,352.32 | 1,551.13 | 12,145.00 | 1,656.19 |
| 1936 | 21,728.16 | 886.62 | 13,680.00 | 7,161.54 |
| 1937 | 21,589.71 | 1,428.40 | 15,630.00 | 4,531.31 |
| 1938 | 17,480.48 | 882.58 | 14,730.00 | 1,867.90 |
| 1939 | 24,313.16 | 1,140.09 | 18,886.80 | 4,286.27 |
| 1940 | 25,545.25 | 1,240.36 | 18,400.00 | 5,904.80 |
| 1941 | 26,789.46 | 1,208.71 | 18,730.00 | 6,850.75 |
| 1942 | 27,733.99 | 1,131.31 | 17,775.00 | 8,827.68 |
| 1943 | 28,988.76 | 1,002.44 | 16,495.00 | 11,491.32 |
| 1944 | 29,596.80 | 1,253.77 | 15,722.50 | 12,620.53 |
| 1945 | 30,350.73 | 1,136.28 | 23,080.00 | 6,134.45 |
| Total | $270,871.85 | $13,358.21 | $186,139.30 | $71,374.34 |

15. On February 3, 1947, an assessment was made against the plaintiff, White River Burial Association, for income taxes, penalty and interest alleged to be due over the following period:

| Year | Deficiency | 25% Penalty | Interest |
|------|-----------|-------------|----------|
| 1934 | $ — | $ — | $ — |
| 1935 | 208.91 | 52.23 | 136.31 |
| 1936 | 540.19 | 135.05 | 320.06 |
| 1937 | 442.07 | 110.52 | 235.40 |
| 1938 | 326.69 | 81.67 | 154.36 |
| 1939 | 465.32 | 116.33 | 191.94 |
| 1940 | 574.50 | 143.63 | 202.51 |
| 1941 | 871.33 | 217.83 | 254.86 |
| 1942 | 1,103.87 | 275.97 | 256.65 |
| 1943 | 1,231.23 | 307.83 | 212.40 |
| 1944 | 1,231.40 | 307.85 | 138.53 |
| 1945 | 1,298.47 | 324.62 | 68.17 |
| Total | $8,294.08 | $2,073.53 | $2,171.19 |

16. On February 3, 1947, an assessment was also made against the plaintiff, White River Burial Association, for Capital Stock Tax, penalty and interest, alleged to be due over the following period:

| Year | Deficiency | 25% Penalty | Interest. |
|------|-----------|-------------|----------|
| 1934 | $ 12.00 | $ 3.00 | $ 9.00 |
| 1935 | 12.00 | 3.00 | 8.28 |
| 1936 | 35.00 | 8.75 | 22.05 |
| 1937 | 38.00 | 9.50 | 21.66 |
| 1938 | 36.00 | 9.00 | 18.36 |
| 1939 | 38.00 | 9.50 | 17.10 |
| 1940 | 46.20 | 11.55 | 18.02 |
| 1941 | 52.50 | 13.13 | 17.33 |
| 1942 | 56.25 | 14.06 | 14.06 |
| 1943 | 62.50 | 15.63 | 13.13 |
| 1944 | 62.50 | 15.63 | 9.38 |
| 1945 | 65.00 | 16.25 | 5.85 |
|  | $515.95 | $129.00 | $174.22 |

17. Substitutes for returns of Income Tax and Capital Stock were prepared and filed by the defendant on Forms 707 and 1120, respectively, and plaintiff, White River Burial Association, under protest paid to the defendant on February 3, 1947, the sum of $13,357.97, which defendant alleged to be due for Income and Capital Stock Tax for the years 1934–45 inclusive.

18. On April 9, 1947, plaintiff, White River Burial Association, filed with the defendant claims for refund of Income and Capital Stock tax, which claims were not allowed or disallowed or otherwise acted upon by the Commissioner of Internal Revenue or the Secretary of the Treasury of the United States within six months after they were filed, and on March 22, 1948, this suit was instituted.

### Conclusions of Law.

1. Plaintiff, White River Burial Association, was not and is not subject to tax as an ordinary corporation under the provisions of Title 26 United States Code Annotated, §§ 13, 14(b) and 15(b), and the applicable sections of the Excess Profits Tax Act.

2. Plaintiff, White River Burial Association, was not and is not a Life Insurance Company subject to tax under the provisions of Title 26 United States Code Annotated, § 201, or an Insurance Company other than life or Mutual, subject to tax under the provisions of Title 26 United States Code Annotated, § 204, and it owes no tax under either of said sections.

3. The total amount of collected assessments after payment of death claims and expenses of operation constitute a life insurance reserve as defined by Title 26 United States Code Annotated, § 201(c) (2).

4. Plaintiff, White River Burial Association, is a mutual insurance company other than life or marine, and is taxable under Title 26 United States Code Annotated, § 207.

5. Plaintiff, White River Burial Association, was not and is not subject to tax on capital stock under the provisions of Title 26 United States Code Annotated, § 1200(a).

6. Plaintiff, White River Burial Association, is entitled to judgment for Income Tax and Capital Stock Tax, penalties and interest erroneously collected in the sum of $13,357.97, plus interest thereon at 6% per annum from February 3, 1947.